

Harold R. Burnstein, John E. Hughes, John W. Hughes, Chicago, Ill., for petitioner.

Lee A. Jackson, Chief, Appellate Section, Lloyd J. Keno, Atty., Abbott M. Sellers, Acting Asst. Atty. Gen., Melva M. Graney, Atty., Dept. of Justice, Washington, D. C., for respondent.

Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.

**ERNEST, HOLDEMAN & COLLET, INC., a corporation, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 13162.

United States Court of Appeals Seventh Circuit.

April 19, 1961.

Rehearing Denied June 2, 1961.

SCHNACKENBERG, Circuit Judge.

From the Tax Court's decision determining deficiencies in income tax of Ernest, Holdeman & Collet, Inc., a corporation, petitioner, for the years 1952 and 1953, it appeals to this court.

Following the introduction of evidence, the Tax Court made findings of fact, the most salient of which we now state, in essential detail.

Petitioner, having its principal office in Elkhart, Indiana, was incorporated on December 29, 1947. It succeeded a partnership consisting of S. Vance Holdeman, Frederick I. Ernest, and his sons, Richard W. and Robert F. Ernest.

---

**4**

During the years 1948 through 1950 the petitioner sold new and used machine tools and did a small amount of rebuilding and tooling of machine tools.

In 1951, with the beginning of the Korean War, new and used machinery both became difficult to obtain, and special tooling for Foster Fastermatics (automatic, hydraulic turret lathes) and similar machines became the bulk of petitioner's business. Frederick, Richard and Robert Ernest and S. Vance Holdeman had all worked for the manufacturer of the Foster Fastermatic. The special tooling program, which involved the engineering and service of machines for various suppliers, extended through 1952 and into 1953.

During the years 1948 through 1950 the petitioner had an average of approximately 12 employees besides officers. The officers performed multiple functions. In 1951 the number of employees was increased to approximately 50. In 1952 the number was further increased to approximately 60. During the years 1951 through 1953 the officers worked long hours—sometimes seven days a week; the shop employees often worked 65 hours a week.

Frederick Ernest, petitioner's president, was 59 years of age in 1952. From 1948 until September 1951 he devoted at least two-thirds of his time to petitioner. During 1952 and 1953 he devoted full time to the petitioner. His duties were diversified. Albert Collet, a graduate engineer and petitioner's vice-president until 1954, was approximately 47 years of age in 1952. Collet was instrumental in obtaining new machine tool lines for petitioner. He was also an excellent salesman and set up petitioner's Indianapolis sales office. He was considered one of the better used machinery dealers. S. Vance Holdeman, petitioner's secretary, was 33 years of age in 1952. After 1945 Holdeman went to work for the Indianapolis Machinery and Supply Company, the largest new and used machinery dealer in Indiana, where he acted as buyer of used machinery and assisted the salesmen in the sale of new and used machinery. Upon petitioner's incorporation in 1947, he became secretary of that organization. During 1952 and 1953, in addition to being officer in charge of sales, he also was an officer in charge of engineering products as related to special machinery and tooling. He traveled extensively for petitioner. Holdeman has been very well accepted in his field. Richard Ernest, petitioner's treasurer, was 35 years of age in 1952. In 1948 he became treasurer and general manager for petitioner and has since continued in that capacity. He has mechanical ability, an understanding of hydraulics, and has had experience with various lines of machine tools. He has spent considerable time estimating special machine tools. Robert Ernest, petitioner's assistant secretary, was 28 years of age in 1952. In 1950 he graduated from Indiana University, receiving a B. S. degree in business administration. During the summers, while he was in college, he worked for petitioner and its predecessor, Apex Machinery Company, in which he was a partner. In October 1950 Robert became assistant secretary of petitioner. His principal responsibility was the purchase of the special tooling to be mounted on the machines upon which petitioner was working. Petitioner engineered the special tooling but subcontracted the actual manufacture of the tools. Robert was responsible for the allocation of these contracts to outside shops. It was necessary for him to coordinate the activities of all shops so that work would flow in at the proper time and meet delivery requirements.

At the initial meeting of petitioner's board of directors early in 1948 the salaries of the vice-president, the treasurer and the secretary were fixed at $5,200 per year. In addition, it was resolved that a bonus was to be paid to officers and directors. The bonus was to equal 75 per cent of the net profits of the corporation, before provision for payment of federal income tax, in excess of 10 per cent of the capital and surplus (including good will) of the corporation, and was to be distributed in stated proportions to the officers and directors.

In August 1948 the president's salary was set at $3,400 per year. This was later decreased to $1,920 per year and then increased to $5,800 per year.

At a meeting in October 1950 the board of directors voted to establish the office of assistant secretary with a salary of $3,600 per year. This salary was later increased to $4,200 and then to $4,320 per year.

The board of directors resolved in December 1950 to continue the bonus plan, the only change being that the bonus was to be distributed to the officers in proportion to their basic salaries. This bonus arrangement prevailed substantially unchanged throughout the years here in issue, with the exception that the amount available to the officers was reduced as a consequence of allowing certain other employees to share in the bonus pool.

Under these arrangements the following amounts of compensation were paid to petitioner's officers:

| Year | Total | Frederick I. Ernest President | Albert J. Collet Vice-President | S. Vance Holdeman Vice-President | Richard W. Ernest Treasurer | Robert F. Ernest Asst. Secretary |
|------|-------|------|------|------|------|------|
| 1948 | $ 31,987.48 | $ 4,791.34 | $ 9,215.38 | $ 8,990.38 | $ 8,990.38 | —— |
| 1949 | 18,200.00 | 3,200.00 | 5,000.00 | 5,000.00 | 5,000.00 | —— |
| 1950 | 47,014.00 | 7,701.00 | 11,124.00 | 11,124.00 | 11,124.00 | $ 5,939.00 |
| 1951 | 235,104.69 | 39,224.47 | 52,299.29 | 52,299.29 | 52,299.29 | 38,982.35 |
| 1952 | 402,318.19 | 85,162.24 | 85,162.24 | 85,162.24 | 85,162.24 | 61,669.23 |
| 1953 | 204,543.26 | 43,290.69 | 43,290.69 | 43,290.69 | 43,290.69 | 31,480.50 |
| 1954 | 25,882.50 | 5,800.00 | 4,162.50 | 5,800.00 | 5,800.00 | 4,320.00 |

In addition to the officers' salaries deducted on its federal income tax returns for the taxable years 1948 through 1954, petitioner also deducted the following amounts as salaries and wages not deducted elsewhere, and salaries and wages as a part of cost of goods sold:

| Year | Salaries and Wages (not deducted elsewhere) | Salaries and Wages (Cost of goods sold) |
|------|------|------|
| 1948 | $ 3,184.91 | $ 25,063.56 |
| 1949 | 7,961.18 | 9,899.76 |
| 1950 | 16,420.99 | 17,411.34 |
| 1951 | 52,707.87 | 120,685.46 |
| 1952 | 154,492.25 | 146,735.92 |
| 1953 | 234,986.24 | 142,524.42 |
| 1954 | 202,089.29 | 110,161.36 |

Petitioner paid its best salesman (not an officer) total compensation of $32,624.-32 in 1952 and $28,231.30 in 1953.

Petitioner's officers were its stockholders as well as directors. Upon incorporation petitioner issued 400 shares of stock of $100 par value as follows:

| Name | No. of shares |
|------|------|
| Frederick I. Ernest | 48 |
| Albert J. Collet | 48 |
| S. Vance Holdeman | 48 |
| Richard W. Ernest | 48 |
| Robert F. Ernest | 208 |

**6**

From January 1, 1952, to April 1, 1954, the stock was held equally among the officers, each holding 80 shares. On April 1, 1954, Albert J. Collet sold his stock to the corporation. There were no other changes in stock ownership during the years here in question.

From the time of its incorporation through 1954 petitioner neither declared nor paid any dividends.

Petitioner borrowed substantial sums from its officers during the years 1952 through 1954. The total amounts borrowed and repayments thereon through January 13, 1955, were as follows:

| Officer | Total Amount Borrowed | Payments Principal | Interest |
|---|---|---|---|
| Frederick I. Ernest | $86,500 | $19,000 | $6,189.93 |
| S. Vance Holdeman | 94,000 | 59,000 | 4,314.24 |
| Richard W. Ernest | 98,000 | 35,750 | 6,389.90 |
| Robert F. Ernest | 97,000 | 54,000 | 4,357.53 |

Petitioner's books and federal income tax records reflect the following:

| Years | Officers' salaries paid | Net income before federal income tax |
|---|---|---|
| 1948 | $ 31,987.48 | $ 9,685.57 |
| 1949 | 18,200.00 | 1,829.55 |
| 1950 | 47,014.19 | 13,246.71 |
| 1951 | 235,104.69 | 83,514.68 |
| 1952 | 402,318.19 | 146,612.55 |
| 1953 | 204,543.26 | 86,365.01 |

The following statement reflects the amount claimed by petitioner as deductions for its officers' salaries during the taxable years and the amounts respectively allowed and disallowed by respondent on account thereof:

**1952**

| Officer | Deduction Claimed | Allowed | Disallowed |
|---|---|---|---|
| Frederick I. Ernest | $ 85,162.24 | $ 25,000.00 | $ 60,162.24 |
| Albert J. Collet | 85,162.24 | 20,000.00 | 65,162.24 |
| S. Vance Holdeman | 85,162.24 | 25,000.00 | 60,162.24 |
| Richard W. Ernest | 85,162.24 | 20,000.00 | 65,162.24 |
| Robert F. Ernest | 61,669.23 | 10,000.00 | 51,669.23 |
| Total | $402,318.19 | $100,000.00 | $302,318.19 |

**1953**

| Officer | Deduction Claimed | Allowed | Disallowed |
|---|---|---|---|
| Frederick I. Ernest | $ 43,290.69 | $ 25,000.00 | $ 18,290.69 |
| Albert J. Collet | 43,190.69 | 20,000.00 | 23,190.69 |
| S. Vance Holdeman | 43,290.69 | 25,000.00 | 18,290.69 |
| Richard W. Ernest | 43,290.69 | 20,000.00 | 23,290.69 |
| Robert F. Ernest | 31,480.50 | 10,000.00 | 21,480.50 |
| Total | $204,543.26 | $100,000.00 | $104,543.26 |

However, the Tax Court found that reasonable compensation for each of the officers during the taxable years 1952 and 1953 was as follows:

| Officer | 1952 | 1953 |
|---------|------|------|
| Frederick I. Ernest | $ 35,000 | $ 25,000 |
| Albert J. Collet | 35,000 | 25,000 |
| S. Vance Holdeman | 35,000 | 25,000 |
| Richard W. Ernest | 35,000 | 25,000 |
| Robert F. Ernest | 22,000 | 18,000 |
| Total | $162,000 | $118,000 |

The Tax Court further found that the remarkable increase in sales and profits enjoyed by petitioner during 1952 and 1953 was not due solely to normal application of the officers' skill and business acumen; rather, it was due in great measure to the Korean War effort and consequent need for retooling in some industries. The large salaries received by petitioner's officers during those years cannot therefore be attributed entirely to their sagacity and industry but resulted, at least in part, from abnormal wartime conditions.

In its brief, respondent calls attention to the fact that the salary paid to officers employed by other similar companies provides one standard by which to determine the reasonableness of compensation.[1] He points out that the taxpayer had the burden of proof that the compensation paid was reasonable and therefore deductible, citing our holding in Clinton Co. v. Commissioner, 7 Cir., 159 F.2d 102, 104:

"The burden of proving whether the compensation paid during 1941 was reasonable and therefore deductible rests on the taxpayer. * * * The taxpayer did not meet this burden because though it was conceded the nature of petitioner's business was highly competitive, apparently no effort was made to compare its salaries with compensation paid to officers in similarly situated firms."

Respondent therefore relies upon the fact that petitioner failed to introduce any evidence of the salaries paid to the officers of similar companies, even though Holdeman, its own witness, testified that it had much competition for business.

In an attempt to meet this contention, petitioner in its reply brief, admits that its previous counsel did not introduce such evidence in the Tax Court,—"perhaps the reason for this is that petitioner was 'unique in their field'." Petitioner thereupon *in its reply brief* undertakes to discuss the facts which appeared in the proceedings before the Tax Court in Huckins Tool and Die, Inc., T.C.Memo 1959–1960 and Adams Tooling, Inc., 33 T.C. 65. It makes in its reply brief a detailed comparison of the annual sales of each of the three taxpayers, as well as a comparison of the amounts of officers' salaries "allowed by the Tax Court", accompanied by its own computation of the percentage of officers' salaries as compared to sales, computed by petitioner's brief writer. These tabulations are followed by an argument meant to demonstrate an inconsistency between the holding of the Tax Court in the case at bar and its holdings in the other two cases.

There is no pretense that this comparison or these arguments were presented to the Tax Court on the hearing of the instant case. If the comparisons be germane, they should have been pre-

1. Treasury Regulations 118, Section 39.23 (a)–6(b) (3) states:
"* * * It is in general just to assume that reasonable and true compensation is only such amount as would ordinarily be paid for like services by like enterprises under like circumstances. * * * *"

**8**

sented to the Tax Court for its consideration in its adjudication of petitioner's case. The Tax Court in the exercise of its original jurisdiction should have had an opportunity to pass upon the matter. Its action thereon would then be before us for review in this proceeding. However, we have no original jurisdiction and we have no right to give original consideration to matters which were never urged upon the tribunal whose order we review.

In conclusion, we hold that the significant facts in this case have the same legal effect as those in the case of Huckins Tool and Die, Inc. v. Commissioner, 7 Cir., 289 F.2d 549. The principles of law which controlled our decision of the Huckins case also control the disposition of this appeal. In accordance therewith, the Tax Court's decision is affirmed.

Decision affirmed.